**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **CASE NO. 22-CR-121 (TNM)** |
| | : | |
| JARED PAUL CANTRELL, | : | |
| QUENTIN G. CANTRELL, and | : | |
| ERIC ANDREW CANTRELL, | : | |
| | : | |
| Defendants. | : | |

**MOTION IN LIMINE TO PRECLUDE ARGUMENTS AND**
**<u>EVIDENCE ABOUT ALLEGED LAW ENFORCEMENT INACTION</u>**

The government respectfully requests that the Court issue an order precluding the defendants, Jared Cantrell, Quentin Cantrell, and Eric Cantrell (collectively, the "Cantrells"), from: (1) arguing an entrapment by estoppel defense related to law enforcement; or (2) offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the defendants' entry into the U.S. Capitol building or grounds or their conduct therein lawful.

I.      **Factual Background**

Prior to their entry into the United States Capitol, the Cantrells marched down Constitution Avenue toward the West Lawn.



The Cantrells reached the Lower West Terrace of the Capitol grounds and climbed to the Upper West Terrace through the Northwest scaffolding.



On the Lower West Terrace – a short distance from where the Cantrells entered the Northwest scaffolding – the MPD was playing a "dispersal order" telling all people to leave the area.   A loudspeaker announced the message: "This area is now a restricted access area pursuant to D.C. Official Code 22-1307(b). All people must leave the area immediately. This order may subject you to arrest and may subject you to the use of a riot control agent or impact weapon."



2

The Cantrells did not leave.

At approximately 2:19 pm, the Cantrells exited the top of Northwest scaffolding and continued to climb the stairs toward the Upper West Terrace.





Once the Cantrells reached the Upper West Terrace, they observed the chaos unfolding outside of the Capitol building.



The Cantrells moved south on the Upper West Terrace.  Their path was blocked by a makeshift barricade, beyond which was a line of law enforcement officers in riot gear.  A video from a rioter shows the barricade, law enforcement, and then pans to the left to show the Cantrells ascending the stairs toward the Upper West Terrace door (the "UWT door") where they entered the Capitol building.



The UWT door where the Cantrells entered the Capitol building was first breached at approximately 2:33 pm by rioters forcing the door open from the inside.



At 2:35 pm, five officers with the U.S. Capitol Police Department (USCP) responded to the breached UWT door.



6

At 2:37pm, an individual with a video camera talked to one of the of five USCP officers, who told her no one is allowed inside the building.





At that same exact time, Jared Cantrell and Quentin Cantrell entered the Capitol building, mere feet from where the USCP officer was talking.  Eric Cantrell followed seconds later.





Inside the UWT door, the Cantrells passed the five USCP officers on their way inside the Capitol building.





The Cantrells did not go through security and there was no indication that this was a legitimate entry to the Capitol building.  In fact, there were alarms blaring and the door that they entered through is clearly marked "Emergency Exit Only."

After the Cantrells entered the Capitol building, the five USCP officers formed a line and attempted to re-secure the UWT door.



As further detailed below, the five USCP officers retreated from their position at the UWT door.



At 2:46 pm, a large group of officers with the District of Columbia Metropolitan Police Department (MPD) resecured the UWT door from the outside.



All five USCP officers who responded to the breached UWT door have been interviewed, and those interviews were produced in Global Discovery.

Officer 1 stated:

> On January 6, 2021, I was assigned to the Inaugural Task Force at GPO building. Upon hearing the protest situation at the Capitol become dire, I responded over to assist... Arrived at Upper West Terrace door. Protestors were entering and exciting door. Door was in fire alarm mode. Sgt. Millard called over radio and asked for a key to secure. No radio response. I looked for a lockdown button but nothing but a phone was nearby. The door is a push bar, opening outward, with no way to even stick an object in the handles to prevent opening. Attempted to hold a line at the door to prevent further entry. Protestors formed on the outside. Other protestors inside appeared at our rear to exit or remained at rear. Crow[d] size significantly outnumbered officers. Decision was made to fall back. I was under the impression that CDV was nearby inside. We did not have the resources to effect any arrests, as only a few officers, few pair of handcuffs between the officers, significantly more protestors, no way to safely get the protestors if arrested to a transport. An[y] attempt to go hands on with the protestors would have yielded injury to officers and

no achievable objective. Crowd flow entered building. Additional protestors exited, which again allowed protesters outside to recognize the door was open. Additional protestors entered. Began to make another attempt at a police line. Was able to hold crowd temporarily. [Fellow Officer] tried to rationalize with the crowd to no avail. Rear of crowd began pushing, causing front of group to advance on the line. Another decision was made [to] fall back. With no safe and achievable objectives, the goal was to find a larger contingent of officers and push the crowd outside the building. Moved back to the OAP hallway and responded to the House Chamber for the call of "shots fired."

Officer 2 stated:

On January 6, 2021, I was assigned to the Inaugural Task Force (ITF) responsible for various duties in preparation for the 59th Inaugural Ceremonies… We began to fall back to the area inside the Upper West Terrace door where there were no support elements. When the group arrived at the door, l began attempting to direct the crowd to the nearest exit which was the Upper West Terrace door. I believed the door to be in alarm and to have been breached. Several people exited out of the door from the group where then l observed people from the crowd outside begin to enter the door. I along with [the other officers] made an initial effort to repel the group of people that were entering the door. A physical confrontation occurred where we began pushing and hitting the leading edge of the crowd in an attempt to expel them from the building. There was an older lady in the front of the group carrying a protest sign that began to scream in pain as size was crushed between us. The group stopped their physical effort to push into the building and this is where I made a second attempt to de-escalate the situation and attempted to convince the group to leave. At some point, I specifically told the group that the building was closed and that's why they were not allowed in. During this dialogue, the main individual in the group is using language to provoke me to respond with physical force. He's stating and repeating all the political rhetoric that the election was stolen, that the process was unconstitutional, that President Trump told us to come here and occupy the building that we (police) were on the wrong side of history. The group began chanting to let us in. Throughout the entire dialog with the group, I used techniques to attempt to calm the group, I told the group that what they were doing was wrong, that in their arguments of defending the constitution that they were disrespecting the [Capitol] building and disrespecting the process. At this point, an individual in the group asked if l was ready to die to protect these people, I immediately attempted to deflect the question and de-escalate, [when] the same individual asked for a second time if I was ready to die for this place at which point I responded that l swore an oath to protect this place and that's what I'm going [to] do. At this point [the senior officer] grabs me by the shoulder, and pulls me back away from the crowd where the people at the door then begin to enter the building. I believe at this point I voiced a request over the USCP radio to have the key brought to the door to re-secure it. As the crowd begins to enter, I recall standing there

looking for weapons and did not see any.  It's at this point that is captured in media and social media videos that someone from the crowd thanks me for supporting their cause which then prompted me to respond, "I don't support you, but respect it, respect the building." The video that was captured edits and removes the question that was asked as well as the clarifying point of "respect the building," which was then attached to a headline falsely asserting that I showed respect for the rebellious action the group was taking. At this point, the group is entering, those of us at the door have exhausted all levels of force, with the exception of deadly force, in an attempt to expel the group. My mindset at this exact moment was a plea that those who were entering would respect the building and not physically harm it. I believe mindset is also key in the actions I took at the Upper West Terrace door. I was prepared to fight, I recognized that we were outnumbered by an adversary that was provoking a violent confrontation. I resolved that had a second confrontation to expel this group occurred, that the end result would have been lethal force. When [the senior officer] pulled me back, it caused me to break the cycle of thought of preparing to fight where I then transitioned in my mind to do what was necessary to preserve life. This included a strategic fall back and regroup to a position where we had better numbers and were in a better position to engage another effort to remove these people from the Capitol. Shortly after falling back to regroup, a "shots fired" call with officer in distress was broadcast over the radio where then either [Officer 3 or senior officer] said we need to get to the House Floor and defend it.

The other three USCP officer interviews are consistent and have been produced in Global Discovery. In short, no officers invited the defendants into the U.S. Capitol on January 6, 2021.[1]

## II.    This Court Should Preclude the Defendants from Arguing Entrapment by Estoppel

The Cantrells should be prohibited from making arguments or attempting to introduce evidence that law enforcement gave them permission to enter the U.S. Capitol. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove

---

[1] Many defendants who entered the Capitol through the UWT door near the time the Cantrells made entry have specifically acknowledged that they "knew at the time [they] entered the U.S. Capitol Building that that [they] did not have permission to enter the building." *See United States v. Nicole Prado*, No. 21-CR-403 (RC), ECF No. 33, *United States v. Jordan Revlett*, No. 21-cr-281, ECF No. 34, *United States v. Josiah Colt*, No. 21-cr-74, ECF No. 22, *United States v. Andrew Rigley*, No. 21-cr-42 (ABJ), ECF No. 29, *United States v. Ryan Suleski*, No. 21-CR-376 (RDM), ECF No. 40, *United States v. Chance Uptmore*, No. 21-CR-149, ECF No. 49.

(1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (emphasis added) (*quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

In *Chrestman*, another judge of this Court rejected an entrapment by estoppel argument raised by a January 6th defendant charged with, inter alia, violations of 18 U.S.C. §§ 1512(c)(2), 1752(a)(1) and (b)(1)(A), and 1752(a)(2) and (b)(1)(A). Although *Chrestman* involved an argument that former President Trump gave the defendant permission to enter the Capitol building, the reasoning in *Chrestman* applies equally to an argument that a member of law enforcement gave permission to the defendants to enter the Capitol building. As reasoned in *Chrestman*, "Cox unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." *Chrestman*, 525 F. Supp. 3d at 32 (*quoting Cox v. Louisiana*, 379 U.S. 559, 569 (1965)).

Just as "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters," no member of law enforcement could use his authority to allow individuals to enter the Capitol building during a violent riot, and after "obvious police barricades, police lines, and police orders restricting entry at the Capitol" had already been put in place by the United States Capitol Police and the Secret Service. *Id*. at 32. Indeed, a judge of this Court ruled in another January 6th case that "the logic in *Chrestman* that a

14

U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022).

Even if the defendants could establish that a member of law enforcement told them that it was lawful to enter the Capitol building or allowed them to do so, the defendants' reliance on any such statement would not be reasonable in light of the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32. Moreover, the defendants' actions belie any argument that they actually relied on any such statement by law enforcement when they made a decision to unlawfully enter the Capitol building through a door broken open with a piercing alarm sounding.

### III. This Court Should Preclude the Defendants from Arguing that Alleged Inaction by Law Enforcement Officers Made Their Conduct on January 6, 2021 Legal

In addition to prohibiting any defense argument that law enforcement actively communicated to the Cantrells that entering the Capitol building or grounds was lawful, the Court should also bar the Cantrells from arguing that any failure to act by law enforcement rendered their conduct legal. The same reasoning that applied in *Chrestman* again applies here. That is, like the Chief Executive, a Metropolitan Police Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F. Supp. 3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law or ratify unlawful conduct by failing to prevent it. Indeed, another judge of this District expressly reached that conclusion in *Williams* recently. *Williams,* No.

21-cr-377-BAH, at *3 ("Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct."). This Court should apply the same principle in this case. Accordingly, the Cantrells should be prohibited from arguing that their conduct was lawful because law enforcement officers allegedly failed to prevent it or censure it when it occurred.

## **CONCLUSION**

For the reasons set forth herein, the government respectfully requests that this Court preclude improper argument or evidence related to entrapment by estoppel or that law enforcement's alleged inaction rendered the defendants' actions lawful.

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Michael L. Jones*
MICHAEL L. JONES
DC Bar No. 1047027
Trial Attorney
Capitol Riot Detailee
U.S. Attorney's Office
District of Columbia
(202) 252-7820
michael.jones@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

*/s/ Michael Jones*
MICHAEL L. JONES
Trial Attorney