UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 22-CR-121 (TNM) |
| | : | |
| JARED PAUL CANTRELL, | : | |
| QUENTIN G. CANTRELL, and | : | |
| ERIC ANDREW CANTRELL, | : | |
| | : | |
| Defendants. | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THIRD-PARTY VIDEO

The United States of America hereby files it response in opposition to Defendant Quentin Cantrell's motion in limine to exclude third-party video evidence and states as follows

### I.   BACKGROUND

The riot at, and attack on, the United States Capitol Building was an event of unparalleled size and scope.    Much of the event was recorded on video: on surveillance footage captured by the U.S. Capitol Police ("USCP") cameras; on Metropolitan Police Department ("MPD") body-worn cameras; and on cameras and phones carried by journalists, members of the mob, and other persons present in the U.S. Capitol building and grounds on January 6, 2021.    The government's case at trial will rely heavily on such evidence to explain the defendant's specific conduct, to contextualize it through other contemporaneous events, and to give the jury a sense of the riot as a whole.    This opposition outlines the types of exhibits the government plans to use and requests that the Court deny Defendant Cantrell's motion in limine to exclude third-party video.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."    Rule 901(b) provides a non-exhaustive

list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be.
> …
> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> …
> (9) *Evidence About a Process or System*. Evidence describing a process or system and showing that it produces an accurate result.

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.,* 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, … and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely … the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell,* 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in

evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349; *see also, e.g., Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any reasonable doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there

3

was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by the evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this opposition. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling denying a motion to exclude evidence, the government must introduce sufficient evidence at trial from which a reasonable juror could find the evidence is authentic. *See, e.g., United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

In the Rule 403 analysis, "[a]uthentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility." *United States v. Rembert*, 863

F.2d 1023, 1026 (D.C. Cir. 1988) (quoting *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982)).

The *Blackwell* case involved a prosecution for unlawful possession of firearms. The photographs in question depicted the defendant holding a firearm, apparently the same as one of the guns seized at the time of his arrest. The prosecution had obtained the photographs as the result of a search of the same room in which the firearms were found. No witness could testify as to when the photographs were made, where they were made, by what process, or whether they fairly and accurately depicted any particular scene on any particular date. The detective who conducted the search did testify that the details of the pictured weapon and the background interior were similar to the details of the weapon and room in question. In upholding the admission of the photographs, the D.C. Circuit utilized the same authentication and identification analysis as they would have with reference to the contents of any documentary evidence. That is, the Court required only that "the proponent of documentary evidence make a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims." *Blackwell*, 694 F.2d at 1330.

In considering the ATM photographic evidence at issue in *Rembert*, the Circuit further expanded the foundations that can support the authentication of photographic and video evidence. In *Rembert*, the sole authenticating witness for the photos was a supervisor in the loss control division of the bank whose ATM machine was used in the crime. The witness testified that she was in charge of investigating questioned activities through the ATM machines. She testified that the machine-maintained records at the branch showed an unusual pattern of use associated with the victim's ATM card on July 26, 1987. The machine's records indicated that the card had

5

been entered ten times on that occasion and was retained by the machine on the tenth attempt. She further testified that video cameras are maintained at each of the three ATM machines at the branch location. A video recorder taped the view from each camera in sequence, rotating to the next camera, taking a photograph every three seconds. This videotaping process imprints the date and time at which the pictures were made on the resultant photographs. She then identified a strip of pictures which was admitted into evidence over the defendant's objection. The witness testified that she had viewed the original videotape and the resultant photographs and that the photographs were fair and accurate depictions of what was on the videotape. On cross examination, she testified that she had no personal knowledge of the events that transpired at the Seat Pleasant location on that date, and could not say from her own knowledge whether the photographs fairly and accurately depicted the scene and events at that time and place or not. *Rembert*, 863 F.2d at 1026. The Court upheld the admission of the photographs, holding:

> Consistent with our decision in *Blackwell* and the teachings of our sister circuits and the courts of the several states, we conclude that the contents of photographic evidence to be admitted into evidence need not be merely illustrative, but can be admitted as evidence independent of the testimony of any witness as to the events depicted, upon a foundation sufficient to meet the requirements of Federal Rule of Evidence 901(a). In this case the circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines, together with the testimony of [the bank supervisor] as to the loading of the cameras and the security of the film, coupled with the internal indicia of date, place, and event depicted in the evidence itself provide ample support for the District Court's exercise of its discretion. Just as the Ninth Circuit held that the contents alone provided sufficient circumstantial evidence for the authentication of the photographs in *Stearns*, so do the contents of the photos in the instant case supply any further need for authentication that the contact prints from the ATM machine may require on the present record.

*Id.* at 1028.

Defendant Quentin Cantrell (Cantrell) is charged in this case with violating the following statutes on January 6, 2021 during the Capitol riots: 1) 18 U.S.C. § 1752(a)(1) (Entering and

Remaining in a Restricted Building or Grounds); 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 3) 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 4) 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). Dkt. No. 15.

The case is currently scheduled for trial on April 3, 2023. The government anticipates introducing several video clips as evidence. On April 5, 2022, the government produced to Cantrell the vast majority of third-party videos it intends to use at trial, including the two specified in the Cantrell's motion.

## II. ANALYSIS

The government's evidence will show that all the videos described herein fairly and accurately depict events at the Capitol which are relevant to an issue of consequence in defendant's trial. While admission of USCP closed-circuit video ("CCV") should be non-controversial, the following discussion will address the evidentiary basis for authentication of CCV as well as third-party video.

### A. U.S. Capitol Police Closed Circuit Video

Admission of U.S. Capitol Police ("USCP") closed-circuit video ("CCV") is straightforward. The government will present a USCP witness to testify to their video surveillance system. This witness will be able to explain how the system is used, that it reliably records and depicts the areas where USCP has installed cameras, and the internal characteristics of videos—such as date and time stamps—which allow USCP to identify and retrieve particular segments of video. A USCP witness who was present during the attack on the Capitol will be able to explain that the CCV offered by the government in this case accurately show the events

that took place at the United States Capitol Building and grounds on January 6, 2021.

That testimony will easily satisfy Federal Rule of Evidence 901(b)(1), "Testimony of a Witness with Knowledge" to show that "an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). *See American Wrecking Corp. v. Secretary of Labor*, 351 F.3d 1254, 1262 (D.C. Cir. 2003) (photograph of accident site was properly authenticated by credible testimony of site supervisor).

Although Rule 901(b)(1) alone would be sufficient to support admission of the USCP testimony, that testimony will also satisfy Rule 901(b)(4), which allows authentication by way of "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). It also will accord with the requirements of Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9).

**B.     Third-Party Video**

The government also intends to offer numerous video clips from sources other than USCP. Some of these were taken from reporters who were present at the Capitol that day. Others were taken by the defendant's fellow rioters or other members of the crowd. Many were obtained through open-source means and are publicly available. For these videos, the government will establish authenticity in one of two ways, or a combination of both: (1) by asking the jury to compare them with other, authenticated exhibits; or (2) by testimony of a person who is familiar with the activities depicted in the third-party video.

1. **By Other Authenticated Exhibits**

For these videos, the government will establish authenticity by asking the jury to compare them with other, authenticated exhibits—namely USCP footage. Fed. R. Evid. 901(3). Police footage confirms the third-party videos are what they purport to be: recordings of the same events, captured from a different perspective, and in some cases depicting details that were not fully captured by the USCP systems. The distinctive characteristics of the defendant's attire, combined with the distinctive characteristics of other rioters captured on USCP footage, will further help support authentication of these exhibits. Fed. R. Evid. 901(4).

2. **By Witness Testimony**

The government offers significant evidence in support of authenticity pursuant to Federal Rule of Evidence 104. Federal Rule of Evidence 104 provides, in part, that:

> (a) In General. The court must decide any preliminary question about whether a witness is qualified, a privilege exists, *or evidence is admissible*. In so deciding, the court is not bound by evidence rules, except those on privilege.

Fed. R. Evid. (a) (emphasis added). The government proffers that the testimony of a USCP Officer, or anyone else, who is familiar with the activities depicted in a third-party video can authenticate it. *See United States v. Demosthene*, 326 F. Supp. 2d 531 (S.D.N.Y. 2004) ("When ruling on the admissibility of evidence, a court is not bound by the federal rules of evidence and may rely upon hearsay and other reliable evidence. *See* Fed. R. Evid. 1101(d)(1); 104(a)" in holding that "the Court finds that it properly relied upon the police reports . . . in ruling on the parties' motions in limine").

Anyone who witnessed the events depicted in a photograph, or recorded in a video, can authenticate the evidence. Courts have ruled that "the evidentiary foundation 'may, but need not

9

be, supplied by the person taking the photograph *or by a person who witnessed the event being recorded*.'" *Id.*, *see also United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982) (police officer present during search and seizure of photograph properly authenticated photograph). The District Court in *Taylor* went on to emphasize that a stricter rule:

> would ignore a fundamental principle underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that *a prima facie* showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact is authentic.

*Id.* Here, any witness present during the events recorded, or photographed, can testify that the events recorded or photographed appear to accurately show the events that took place. That threshold showing is sufficient to authenticate any video recording or photograph, with the finder of fact left to determine what weigh should be given to the evidence.

Moreover, any of the individuals depicted in the videos can authenticate the video, even if they do not have an independent recollection of the encounter. *Penn v. Detweiler*, No. 1:18-CV-00912, 2020 U.S. Dist. LEXIS 38634, 2020 WL 1016203 (E.D. PA, Jan. 22, 2020). *See also Vazquez v. City of Allentown*, 689 F. App'x 695, 700 (3d Cir. 2017).

**C.    The videos identified in Cantrell's motion should not be excluded pretrial.**

Cantrell seeks to preclude two videos—the "Teargas! Video" and the "Alarm Video"—as well as "other 3d-party videos." Dkt. No. 51 at 3–5. The Court should deny each request.

**1.    The tear gas video**

The tear gas video is 56 seconds long and recorded in portrait mode on a rioter's cell phone. The video begins facing east, showing the crowd massed on the west side of the Capitol building,


and then pans to the left across the Upper West Terrace, capturing police officers retreating south on the Upper West Terrace. It continues to pan to the left, showing rioters entering the Senate Wing doors, and then keeps panning left until it shows a close-up on all three Cantrell cousins:



Defendant Quentin Cantrell is circled in yellow.

Cantrell's motion argues to exclude an entire video because, in one short section of the clip, the government proffers that people can be heard yelling "tear gas!" The Court should deny the motion because offering the video for this purpose is not hearsay, and even if it was, exclusion of the whole video at this stage is premature and overbroad.

The "tear gas" statement is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness" because it was a "statement relating to a startling event or condition, made while declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(3). For a statement to qualify as an excited utterance, the government, in this context, must

11

establish the (1) occurrence of a startling event; (2) the declarant made the statement while under the stress of excitement caused by the event; and (3) the statement relates to the event. *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003). Here, there is little question that this would satisfy the Circuit's strictures. There is no reasonable dispute that intruders screaming "tear gas!" at the U.S. Capitol, in the middle of a riot while law enforcement officers are literally deploying said gas, would qualify. Even if the Court disagrees, the government should be allowed to put on USCP or MPD witnesses who can testify to the use of tear gas on or near the Upper West Terrace, and then the video itself would not be used to prove that tear gas had been fired, but that Cantrell was on notice that it had been fired. Thus, it would not be hearsay because it would not be used to prove the truth of the matter asserted. This categorical non-hearsay would, as is relevant, prove the defendant's knowledge that he was not permitted to be in the U.S. Capitol on that day.

In any event, exclusion of the whole video at this stage is premature and overbroad. Cantrell complains that the government has not identified the witnesses it intends to use to admit the video, but the government is not required to disclose its witness list more than a month before trial. Even if the "tear gas!" statement is hearsay—a questionable proposition—the video clip can be edited to omit that specific portion of the audio or can be played without audio. Excluding the entire video is not the appropriate remedy.

Implicit in Cantrell's motion is an argument that the video should be excluded because it is inauthentic or unreliable. *See, e.g.*, Dkt. No. 51 at 3–4 ("This is exacerbated by the fact that the Government has not identified a sponsoring witness for the video. No one can be cross-examined about how the recording comports with what they heard and saw at the time, about the

hardware and software used to record the video, or about the conditions and methods of recording."). As addressed above, the government can establish authenticity in many ways. The government does not need to call the person who recorded the video—rather, comparison to other authenticated exhibits or testimony of a witness who was there is legally sufficient. For the "tear gas" video, there are many people who were there at the Upper West Terrace. Notably, at the beginning of the video, it captures police officers retreating from the Upper West Terrace door where the Cantrells unlawfully entered the Capitol building:



The government could call one of the police officers pictured above in the yellow circle, if a stipulation as to the video's authenticity is not reached. The government could also use other videos to corroborate the events as observed on the "tear gas" video to satisfy the low bar of authenticity. The defendant's objections, however, lack merit.

**2.    The alarm video**

The government also produced a video from another rioter's cell phone that shows the rioter entering the Capitol building through the Upper West Terrace door seconds before the Cantrells unlawfully entered.  In the video, an alarm is clearly blaring.  Comparison between CCV and the video confirms its authenticity.





The similar parts between the cell phone video (first image) and CCV (second image) are circled with the same color. It is also noteworthy that, in the second image, CCV shows a rioter recording with a cell phone in landscape mode (circled in pink), exactly how the first image was captured.

For the alarm video, the government can establish authenticity in multiple ways. First, the government can establish authenticity by comparison to other authenticated exhibits—here, the CCV from inside the Upper West Terrace door. Although CCV does not have audio, it can show that the events taking place in the alarm video are the same as those taking place on CCV. Moreover, when Cantrell unlawfully entered the Capitol building, there were multiple police officers at the entrance. The below CCV image shows Quentin Cantrell in yellow, Jared Cantrell in red, and two police officers at the bottom of the image.



The government could authenticate the alarm video by calling any of the officers who were there at the Upper West Terrace door and personally heard the alarm.

15

### 3. Other third-party video

Cantrell makes a catch-all argument that third-party video is generally unreliable because of unspecified "alterations in the recording." Dkt. No. 51 at 5. For the reasons explained above, the government can authenticate third-party video in multiple ways—it does not need to call the witness who recorded the video to authenticate it. And the defendant is entitled to attempt to rebut the accuracy of said recordings, once properly admitted, before the trier of fact.

### III. CONCLUSION

WHEREFORE, the Government respectfully requests that this Court deny Defendant's motion in limine to exclude third-party video evidence.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Michael L. Jones*
MICHAEL L. JONES
DC Bar No. 1047027
Trial Attorney
Capitol Riot Detailee
U.S. Attorney's Office
District of Columbia
(202) 252-7820
michael.jones@usdoj.gov