UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 22-CR-121 (TNM) |
| | : | |
| JARED PAUL CANTRELL, and | : | |
| QUENTIN G. CANTRELL, | : | |
| | : | |
| Defendants. | : | |

## GOVERNMENT'S TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court. As described below, the government will introduce video evidence and testimony from law enforcement witnesses. In an effort to streamline its presentation for this bench trial and focus on the matters in dispute, the parties have agreed to certain stipulations. The parties have also agreed to the authenticity of all the exhibits and defense has reserved their right to challenge certain exhibits as to the admissibility of the exhibits. To the extent defense have objected to evidence in any of their motions, they are not waiving those objections and do not stipulate to the evidence.

**I.      THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANTS' ACTIONS**

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds and interrupted the Joint Session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael R. Pence was serving as the President of the Senate at the U.S. Capitol and presiding over the Joint Session and Senate proceedings. On that day, U.S. Secret Service was present for the protection of the Vice President and his family members, and physical barriers and law enforcement officers surrounded the U.S. Capitol building and grounds. At all relevant times, the U. S. Capitol building and its grounds—

including the northwest lawn, the northwest staircase, the upper west terrace, and the entire U.S. Capitol building itself—were closed to members of the public.

The defendants: Jared Cantrell, Quentin Cantrell, and Eric Cantrell[1] are cousins that live in Indiana. They drove together to Washington D.C. on January 5, 2021, to attend the "Stop the Steal" rally. On January 6, 2021, the defendants attended the rally and then marched down Constitution Avenue toward the West Lawn of the U. S. Capitol.

The defendants were among the rioters who illegally entered the U.S. Capitol grounds and then entered the U.S. Capitol building itself. On the grounds, rioters toppled barricades established by the U.S. Capitol Police that consisted of metal bike racks, physically linked end to end. On the west side of the U.S. Capitol, workers had erected scaffolding over a staircase that led to the Upper West Terrace in preparation for the upcoming presidential inauguration. The defendants reached the Lower West Terrace of the Capitol grounds and ascended to the Upper West Terrace through the Northwest scaffolding. At approximately 2:19 pm, the defendants exited the top of the scaffolding and continued to climb the stairs toward the Upper West Terrace.

When the defendants reached the Upper West Terrace, they passed toppled bike rack barricades strewn about the Upper West Terrace stairs and landing. The defendants then spent approximately 19 minutes on the Upper West Terrace observing the chaos unfold outside the Capitol building.

During the approximate 19 minutes that the defendants were on the Upper West Terrace a large group of law enforcement officers are aligned and attempting to protect the Capitol. Initially, the officers are positioned north of the Upper West Terrace door. This is the door that the defendants ultimately use to enter the Capitol. The Upper West Terrace door is a fire exit door

---

[1] On March 27, 2023, Eric Cantrell plead guilty to Count Four in this case and was sentenced the same day to three months probation, 40 hours of community service, $10 special assessment fee, $500 restitution and a $1,000 fine.

and not a door equipped with security measures to allow access into the Capitol. Rioters in the crowd are often chanting and comment on the presence of tear gas in the air. Law Enforcement officers ultimately fall back south of the Upper West Terrace door.

Rioters in the crowd used scaffolding, bike racks, and other metal objects to build a barricade between the rioters and the law enforcement officers present on the Upper West Terrace. The barricade is erected just south of the Upper West Terrace door.

Meanwhile, the Joint Session of Congress had been suspended and members of Congress were being evacuated by Capitol Police to secure locations within the U.S. Capitol complex. The presence of the mob inside and outside of the U.S. Capitol building presented a threat to the physical safety of members of Congress and to police themselves. Capitol Police were forced to choose between protecting members of Congress and guarding sensitive spaces in the building.

At approximately 2:34 pm, a rioter who had previously infiltrated the Capitol exited out the Upper West Terrace door. The Upper West Terrace door is a double fire door with signs on each door which read, "EMERGENCY EXIT ONLY  PUSH UNTIL ALARM SOUNDS (3 SECONDS)  DOOR WILL UNLOCK IN 15 SECONDS" and designed so that immediately upon being opened a loud emergency alarm is activated and remains active until the door is closed and rest through the use of a key.

The defendants moved south on the Upper West Terrace. The defendants made their way to the makeshift barricade with a line of police officers in riot gear to their south. At approximately 2:37 pm, the defendants ascended the stairs toward the Upper West Terrace door as the alarm from the fire door wailed the warning alarm.

Between the initial breach of the Upper West Terrace door at 2:34 pm and the defendants making their way to the door at 2:37 pm, 5 uniformed officers from the United States Capitol

Police attempted to stop the rioters from entering the Capitol through the Upper West Terrace door.  However, the rioters were able to overwhelm the 5 officers through their sheer number and aggression.

At approximately 2:37 pm, the defendants entered the Capitol along with other rioters through the Upper West Terrace door.  The defendants entered through the two fire doors doors with the two signs on the doors marked "EMERGENCY EXIT ONLY  PUSH UNTIL ALARM SOUNDS (3 SECONDS) DOOR WILL UNLOCK IN 15 SECONDS" and the alarm sounding loudly and passed by boxes stacked and lined against the narrow hallway inside the door.

Quentin Cantrell remained in the Capitol for approximately two minutes along with many other rioters whose numbers greatly outnumbered law enforcement as law enforcement was attempting to secure the Capitol.  Quentin Cantrell exited out the Upper West Terrace door and made his way back to the northwest stairs adjacent to the scaffolding.  At 3:07 pm, Quentin Cantrell attempted to climb over the stair wall and down the ground.

Meanwhile, Jared Cantrell made his way into the Rotunda of the Capitol along with many other rioters.  While inside the Capitol, video captured by Jared Cantrell shows the large number of rioters inside the Capitol.  Rioters can be heard chanting, "U.S.A" as well as stating, "Our house!"  Additional video captures rioters yelling, "Freedom!"  Jared Cantrell stayed inside the Capitol for approximately 10 minutes before finally exiting the Capitol at approximately 2:47 pm.

Eventually, the defendants all left the Capitol grounds and made their way back to Indiana together.

A search warrant for Jared Cantrell's Facebook account resulted in the recovery of several posts by Jared Cantrell.  On January 6, 2021, the defendant posted, "I was one of the first 50 in."  Another post from January 6, 2021, stated, "Forceful entrance."

The defendant's conduct while on the U.S. Capitol grounds and inside the U.S. Capitol building establish his violations of 18 U.S.C §§ 1752(a)(1) and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and 5014(e)(2)(G).

## II. THE GOVERNMENT'S PROOF

### A. Witnesses and Stipulations

The government will call a Capitol Police Officer who will provide an overview of the U.S. Capitol building and grounds and explain how the building and grounds were overrun on January 6, 2021. The government will present video footage that will document what occurred as the U.S. Capitol grounds and building were breached. The video evidence will also document what the defendants did before they entered the building, what they did while inside the building, and what they did after exiting the building. The video evidence will be from closed-circuit video (CCV) and video taken by third parties who were present at the U.S. Capitol.

The government will also present stipulated trial testimony from U.S. Secret Service (USSS) Special Agent Elizabeth Glavey that will be relevant to prove several key elements of the some of the charged offenses. Counts One and Two, which charge violations of 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2), require proof that the defendant entered or remained within a restricted building or grounds. Grounds may be restricted, under this statute, if a USSS protectee is temporarily visiting. 18 U.S.C. § 1752(c)(1)(B). Here, that is the former Vice President, who was visiting the U.S. Capitol in his capacity as President of the Senate, for the proceedings relating to the certification of the Electoral College vote. Special Agent Glavey's testimony in *United States v. Larry Brock*, 1:21-cr-000140-JDB, proves that Vice President Pence was visiting the U.S. Capitol on January 6, 2021, he presided over the entirety of the certification, and he remained at the U.S. Capitol during the riot.

The Government will present testimony from Lieutenant Patrick Ceresa of the Capitol Police.  Lt. Ceresa will provide testimony regarding his actions on January 6, 2021, at the Capitol and specifically the events that were taking place at the Upper West Terrace door at and around the time the defendants entered the Capitol.

The government will present testimony of Task Force Officer Gary Warfield, the lead investigator of this case, who will testify to his investigation about the riot that transpired at the U.S. Capitol and the defendants' involvement in the riot.  The Government will present video evidence which will document what the defendants did before they entered the Capitol, what they did while inside the building, and what they did after exiting the building.  The video evidence will be from closed-circuit video (CCV), body-worn camera footage from Metropolitan Police Department officers, video taken by Jared Cantrell and video taken by third parties who were present at the U.S. Capitol.

In effort to streamline the trial, the government and defendants have reached the following stipulations: (1) a description of the U.S. Capitol Building and Grounds; (2) an overview of the timeline and events of the Certification of the Electoral College Vote; (3) the defendant's identity and presence on the U.S. Capitol grounds and in the U.S. Capitol building on January 6, 2021; (4) the operation and maintenance of the U.S. Capitol Police closed circuit video monitoring; (5) the operation and maintenance of the U.S. House and U.S. Senate recording studio closed circuit video monitoring; (6) authenticity of the government's video evidence that includes a video montage from U.S. Capitol Police's CCV footage, a compilation video from the U.S. House and Senate, U.S. Capitol Police's CCV videos, open source videos; and (7) to the testimony of USSS Special Agent Elizabeth Glavey.

### B. Elements of the Crimes Alleged

The Information charges each of the defendants with four offenses. The offenses are as follows[2]:

Count One

Count One of the Information charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restrict building, you may consider all of the evidence, including what the defendant did or said.

---

[2] Unless otherwise noted, the instructions here reflect the jury instructions used by the Court in *United States v. Hale-Cusanelli*, 21-CR-37 (TNM).

<u>Count Two</u>

Count Two of the Information charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The terms "restricted building or grounds" and "knowingly" have the same meanings as previously defined.

<u>Count Three</u>

Count Three of the Information charges the defendant with disorderly or disruptive conduct in a U.S. Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find

the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3. Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Two defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning as previously defined.

## Count Four

Count Four of the Information charges the defendant with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings;

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[3]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

### III. THE PARTIES' EVIDENCE AND ANTICIPATED DEFENSES

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections. The government has met and conferred with defense counsel about the evidence it plans to present. Based on that meeting, the government expects that many of the Government's exhibits will be admitted without objection.

The government anticipates that the defense will focus on the defendants' actions and their *mens rea* in committing the charged offenses. The government's evidence of the defendants' actions on January 6, will establish that they acted with the requisite intent.

### IV. CONCLUSION

The defendants were active participants in the breach of the U.S. Capitol on January 6, 2021. Acting together and with others around them, they joined rioters that were seeking to stop the certification of the Electoral College vote both on the U.S. Capitol grounds and inside the U.S.

---

[3] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

Capitol building. At trial, the evidence will prove beyond a reasonable doubt that the defendants committed each offense charged in the Information.

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            United States Attorney

                                            By:_/s/Zachary Phillips_
                                            ZACHARY PHILLIPS
                                            Assistant United States Attorney
                                            Colorado Bar No. 31251
                                            Detailee, Capitol Siege Section
                                            601 D Street NW
                                            Washington, DC 20530
                                            (720) 281-1611
                                            Zachary.phillips@usdoj.gov

                                            _/s/Michael L. Jones_
                                            MICAHEL L. JONES
                                            DC Bar No. 1047027
                                            Trial Attorney
                                            Capitol Riot Detailee
                                            U. S. Attorney's Office
                                            District of Columbia
                                            (202) 252-7820
                                            michael.jones@usdoj.gov